JASPER E. JONES, Judge.
This is a suit to determine the ownership of a Vfeth mineral interest in 120 acres of land situated in Claiborne Parish, Louisiana and the proceeds from the production of minerals from it. The plaintiffs are Ralph L. Harmon and William Gordon Still, Jr., who acquired the property at a judicial sale held to partition the property by licitation (though the property was actually bid in the name of Harmon, it was established at trial that Still was a silent partner in the transaction and Harmon conveyed Still a Vi interest in the property). These plaintiffs contend they own the disputed V6th mineral interest and the funds derived from it. The defendants are Leon H. Whitten and his father, H. L. Whitten. The trial court awarded the disputed mineral interest and monies from the production of said interest to plaintiffs who had purchased the 120 acres at a partition sale. Defendants-ap *963 pellants contend that the Veth mineral interest belongs to appellant Leon H. Whitten, and that he was properly entitled to the funds received by him from the production of said interest. We affirm.
We quote from the reasons for judgment of the trial judge as they correctly set forth the facts, the contentions of the parties, and substantially set forth the correct legal reasons for determining that the Vfcth mineral interest in the dispute belongs to the plaintiffs.
“The following basic facts are not seriously in dispute:
1. On May 8, 1975, defendant, Leon H. Whitten, acquired an undivided one-sixth interest in the surface and minerals in the 120 acres of land in question.
2. On June 13, 1975, Leon Whitten filed a partition suit, Suit No. 24,945, in Claiborne Parish seeking to partition the 120 acres by licitation. No notice of lis pendens was filed.
3. On September 24,1975, while the partition suit was pending, Leon Whitten sold a one-sixth mineral interest in the 120 acres of land to his father, H. L. Whitten, who is the other defendant in this suit.
4. On March 2, 1976, a judgment was rendered in the partition suit ordering the sale of the 120 acres in question.
5. On August 4, 1976 the 120 acres was sold at a partition sale, and plaintiff, Ralph Harmon, was the purchaser.
6. On August 5, 1976 Ralph Harmon conveyed to Leon Whitten a one-third interest in the 120 acres, including surface and minerals.
7. On August 11, 1976, H. L. Whitten executed a royalty deed conveying a one-eighth royalty in and to his one-sixth mineral interest to Richard L. Shaw.
8. On September 16,1976, Leon Whitten executed a mineral deed in favor of H. L. Whitten for a one-sixth interest in the 120 acres, and that instrument contained the following provision:
‘The vendor and vendee agree and acknowledge that the mineral servitude created on September 24, 1975, by Leon H. Whitten in favor of H. L. Whitten covering the above described property (File No. 271785, Book 415, Page 154, Conveyance Records, Claiborne Parish, Louisiana) was extinguished by a partition by licitation suit styled Leon H. Whitten vs. Annie Baily Beasley, et al, No. 24,945, Second Judicial District Court, Claiborne Parish, Louisiana, in which the above described property was sold to Ralph L. Harmon on August 9, 1976 (File No. 276085, Book 427, Page 902, Conveyance Records, Claiborne Parish, Louisiana) and this is a reconveyance of the same mineral interest for the same consideration paid in the first mineral deed.’
9. On November 5, 1976, Leon Whitten filed a rule to show cause in the partition suit, alleging that certain transactions involving the 120 acres had been made prior to the sale and subsequent to the judgment of partition, and ruling the parties to show cause why the purchasers of these subsequently transferred interests should not be recognized as the owners of those interests in the distribution of the sale proceeds. That rule to show cause did not mention the sale by Leon Whitten to H. L. Whitten on September 24, 1975, which was made prior to the sale and prior to the judgment of partition. After the hearing on the rule to show cause, a judgment was rendered on November 16, 1976 ordering that the funds be distributed in accordance with the proces verbal prepared by Leon H. Whitten and filed by the Clerk of Court, which proces verbal recognized Leon Whitten as the owner of a full one-sixth interest in his own right.
10. On December 10, 1976, Ralph Harmon conveyed to the other plaintiff in this suit, William Gordon Still, Jr., one-half of all his interest in the 120 acres.
11. On January 1, 1977, Leon Whitten conveyed to plaintiffs, Ralph Harmon and William Gordon Still, Jr., the one-third interest in the 120 acres which he then owned, but reserved unto himself ‘all minerals and mineral rights he now owns in the entirety of the above described property.’
*964 12. On September 20, 1977, Leon Whit-ten conveyed to H. L. Whitten a one-sixth mineral interest in the 120 acres of land.
Subsequently there was mineral production on the 120 acres, and the operator of the unit circulated a division order in which Leon Whitten was recognized as the owner of a one-sixth interest in the minerals, and certain royalties were paid to him prior to this suit being filed. There were other transactions involving small interests in the 120 acres, but these other transactions appear to be collateral in nature to the question presented in this suit. The basic question presented in this suit is whether Leon Whitten owns a one-sixth mineral interest in the tract in question. Plaintiffs contend that they own two-thirds mineral interest and H. L. Whitten was conveyed a one-third mineral interest. Defendants contend that plaintiffs own a one-half mineral interest, H. L. Whitten was conveyed one-third mineral interest, and Leon Whitten owns one-sixth mineral interest.
The basic contention of the defendant is that Leon Whitten transferred a one-sixth mineral interest to H. L. Whitten on September 24, 1975; that Leon Whitten thereafter acquired a one-third interest in the minerals and surface from Ralph Harmon on August 5, 1976 (after the partition sale); that Leon Whitten affirmed the one-sixth mineral interest to H. L. Whitten by the instrument dated September 16, 1976; and that Leon Whitten then conveyed a one-sixth mineral interest to H. L. Whitten on September 20, 1977; with the result being that H. L. Whitten acquired a total of one-third mineral interest and Leon Whitten retained a one-sixth mineral interest.
On the other hand, plaintiffs contend that the September 24, 1975 sale of one-sixth mineral interest from Leon Whitten to H. L. Whitten was void or was extinguished by the partition sale on August 4, 1976. They further contend that the September 16, 1976 instrument acknowledged that the September 24, 1975 conveyance from Leon Whitten to H. L. Whitten was extinguished by the partition sale or it was rescinded by mutual agreement of the parties, so that the effect of the September 16, 1976 instrument was to convey to H. L. Whitten a one-sixth mineral interest to replace the one-sixth mineral interest that the parties had attempted to convey on September 24, 1975. Plaintiffs contend that at the time of the September 16, 1976 instrument, Leon Whitten had acquired a one-third interest from Ralph Harmon after the partition sale, and that one-half of his one-third mineral interest, or a one-sixth mineral interest, was thereby conveyed to H. L. Whit-ten, leaving H. L. and Leon Whitten with a one-sixth mineral interest each.[1] Plaintiffs then contend that the subsequent transfer of a one-sixth mineral interest by Leon Whitten to H. L. Whitten on September 20, 1977, left Leon Whitten with no mineral interest in the tract in question.
This Court does not find it necessary to determine whether the May 24, 1975 sale from Leon Whitten to H. L. Whitten was a nullity because of the close father-son relationship between the parties and because of their mutual participation in the events leading up to and including the filing of the partition suit; nor does the Court find it necessary to determine whether the September 24, 1975 sale of one-sixth mineral interest from Leon Whitten to H. L. Whit-ten was extinguished by the partition sale on August 4, 1976 as a matter of law.
The Court views the key to this case to be the September 16,1976 instrument between Leon Whitten and his father, H. L. Whit-ten. That instrument arose because on August 11, 1976 H. L. Whitten had sold a one-eighth royalty interest to Richard L. Shaw. Mr. Shaw employed an attorney to *965 examine the title to his purchase, and the attorney questioned the validity of his title because of the possibility that the one-sixth interest of H. L. Whitten had been extinguished by the partition sale. In order to cure any possible defect in the title acquired by Mr. Shaw, his attorney prepared the September 16, 1976 instrument as a corrective instrument to eliminate that question. This Court is convinced and finds that the intent of the September 16,1976 instrument was to put to rest the question whether the mineral servitude in favor of H. L. Whitten had been extinguished by the partition sale. By the provision in that instrument which is quoted above, the parties agreed the the mineral servitude was in fact extinguished by the partition sale, and the parties acknowledged that the September 16, 1976 instrument was to convey the same (a one-sixth) mineral interest for the same consideration paid in the first mineral deed. The extinguishment of the prior mineral servitude meant that the one-sixth mineral interest went to Ralph Harmon, who had purchased it at the judicial sale. Actually, Leon Whitten conveyed a one-sixth mineral interest to H. L. Whitten to replace the prior servitude, then extinguished.
The Court believes the intent of the parties was to place on the public record an instrument indicating to all that the original conveyance of the one-sixth mineral interest to H. L. Whitten on September 24, 1975 was rescinded either by the partition sale or by the instrument itself, and to show that Leon Whitten was now conveying a one-sixth interest to H. L. Whitten to replace the prior one-sixth mineral interest that was then extinguished. Certainly the parties are now estopped from denying that result.
Since Leon Whitten had acquired a one-third interest in the property from Ralph Harmon prior to the September 16, 1976 instrument, the effect of that latter instrument was to leave Leon Whitten with one-sixth mineral interest and to establish one-sixth mineral interest in H. L. Whitten. This also had the effect of validating the transfer of the royalty interest by H. L. Whitten to Mr. Shaw on August 11, 1976. This is further shown by the fact that the September 16, 1976 instrument contained an additional provision that it was to be effective August 10, 1976, although it was executed on September 16, 1976. That intention was to make the effective date prior to the August 11, 1976 transfer to Mr. Shaw.
Louisiana Revised Statute 31:27 provides the modes of extinction of mineral servi-tudes.
‘27. Extinction of minera] servitudes A mineral servitude is extinguished by: *
******
(3) renunciation of the servitude on the part of him to whom it is due, or the express remission of his right; * * * ’
The September 26,1976 instrument was a renunciation of the servitude on the part of H. L. Whitten and an express remission of his right to that servitude. That instrument then conveyed a one-sixth mineral servitude to H. L. Whitten to replace the servitude which had then become extinct. At any rate, by the doctrine of estoppel, H. L. Whitten and Leon Whitten are now es-topped to deny that the September 16,1976 instrument had this effect.
Another key to this case is the November 5,1976 rule to show cause which established the distribution of the proceeds of the partition sale. In that rule filed by Leon Whit-ten no mention was made of the May 24, 1975 conveyance from Leon Whitten to H. L. Whitten of one-sixth mineral interest, nor was any mention made of the transactions after the partition sale, including the September 16, 1976 transaction between Leon and H. L. Whitten. Defendants now claim that Harmon raised no objection at the hearing on the rule to show cause why the proces verbal should not be homologat-ed. However, this argument overlooks the *966 fact that the September 16, 1976 instrument had been recorded prior to the rule to show cause, and since that instrument indicated that the one-sixth mineral interest of H. L. Whitten was extinguished by the partition sale or by the instrument itself, Ralph Harmon had no reason to object to the recognition of Leon Whitten as the owner of a full one-sixth interest in the sale proceeds as of the date of the judicial sale. In fact, the recognition of Leon Whitten as the owner of a full one-sixth interest, without any separate appraisal or deduction of the one-sixth mineral interest he had attempted to transfer to H. L. Whitten, was in accordance with the present contention of plaintiffs in this suit. As a matter of fact, the fact that Leon Whitten represented himself to be the owner of a full one-sixth interest in the sale proceeds, after the September 16,1976 instrument, can be taken as an acknowledgement on his part that he actually owned a full one-sixth interest at the time of the partition sale. The proces verbal of the partition sale recognized the ownership interests as of the date of the sale, and it did not recognize any subsequent transfer. Therefore, the September 16, 1976 instrument would seem to have been treated as any other subsequent transfer after the partition sale, since it was not recognized in the distribution schedule. Its effective date was August 10, 1976, which was after the partition sale. This is a further indication that the parties did not contemplate that the instrument had the effect of reinstating or affirming the September 24, 1975 mineral interest in H. L. Whitten.
For these reasons, the Court concludes that Leon H. Whitten is not the owner of a one-sixth interest in the minerals under the tract in question. Therefore, plaintiffs are entitled to be recognized as the owner of that one-sixth mineral interest, and defendant, Leon Whitten, should make an accounting to plaintiff for any royalties he received as a result of alleged ownership of that one-sixth mineral interest, and he should further be ordered to repay to plaintiffs any sums he has received from that interest.”
Appellants assign as error the trial court’s interpretation of the provisions of the September 16, 1976 mineral deed (second deed) as extinguishing the mineral servitude created September 24, 1975 (first deed). They contend that they never intended for the following language contained in the second deed to have the effect of extinguishing the servitude created in the first deed:
“The vendor and vendee agree and acknowledge that the mineral servitude created on September 24, 1975, by Leon H. Whitten in favor of H. L. Whitten covering the above described property (File No. 271785, Book 415, Page 154, Conveyance Records, Claiborne Parish, Louisiana) was extinguished by a partition by licitation suit styled Leon H. Whitten vs. Annie Baily Beasley, et al, No. 24,945, Second Judicial District Court, Claiborne Parish, Louisiana, in which the above described property was sold to Ralph L. Harmon on August 9, 1976 (File No. 276085, Book 427, Page 902, Conveyance Records, Claiborne Parish, Louisiana) and this is a re-conveyance of the same mineral interest for the same consideration paid in the first mineral deed.”
They further contend that the second deed should not have been given the effect attributed to it by the trial judge because though the document was required by Attorney Meadors in connection with H. L.’s royalty sale to Meadors’ client, Shaw, that the document was unnecessary in order to assure Shaw a good royalty title and for this reason it should be given no effect. Appellants also assert that the quoted language from the second deed which extinguishes the servitude created by the first deed can have no effect because it is contrary to the provisions of LSA-R.S. 31:179.
Attorney Meadors examined H. L.’s title to determine if his client could obtain a good and valid title to one-eighth royalty based upon the mineral servitude acquired by H. L. on September 24, 1975. Meadors concluded that because the servitude was created while the partition suit was pending that it may have been extinguished by the *967 partition sale of August 4, 1976. Because his client was paying a very substantial amount to H. L. for this royalty interest Meadors required H. L. and Leon to execute the new mineral sale of September 16,1976. Meadors did this in order to be certain that his client would receive a good title to the royalty purchased.
The above quoted language from the mineral deed prepared by Meadors is clear and unambiguous to the effect that the initial H. L.-Leon servitude was extinguished. The following quoted language from the deposition of Meadors leaves no doubt that the exact purpose he sought to accomplish was to extinguish the first servitude and to create a new one:
“Q. Right.- What curative work did you require in connection with this particular transaction?
A. Well, I was concerned about a previous mineral deed. Mr. H. L. Whitten’s interest at that time was dependent upon a mineral sale from Leon H. Whitten which I don’t have a copy of that before me here. It was dated September 24, 1975, and it’s filed for record under File No. 271758-excuse me-271785, Book 415, page 154 of the Conveyance Records of Claiborne Parish. This is a mineral deed from Leon H. Whitten to H. L. Whitten and this is the same mineral interest which Mr. H. L. Whitten was conveying-he was conveying the royalty from this mineral servitude to my client, Mr. Shaw, and that was the basis for his title. At that time, there was pending at that time of the mineral transaction from Mr. Whitten-Leon H. Whitten to H. L. Whit-ten in ’75 there was pending a suit for partition by licitation of properties covered by the mineral transaction, and I considered it questionable as to whether this mineral sale did become extinguished by the eventual sale resulting from the partition by licitation suit, * * *. (Id. Tr. p. 114-115.)
Q. Now, the purpose of that instrument, in order to make Mr. Shaw’s royalty interest-royalty purchase good, was (1) that these parties, the father and son, Leon and H. L., acknowledge and declare that the previous mineral sale made while this partition suit was pending was extinguished, and that this particular mineral sale which you prepared was to be a substitute in place of that, isn’t that right?
A. That’s right, that’s expressed in the-
Q. That’s clearly expressed in the deed-in the mineral sale itself, it is not?
A. Yes.
Q. And there’s no-can you see any ambiguity in there about that purpose?
A. I can’t now, and I certainly didn’t then.” Id. Tr. 117-118.
The following quote from the testimony of Leon Whitten establishes that he understood the document Meadors was requiring him to sign extinguished the first servitude:
“Q. That’s right, after that paragraph. Now Mr. Whitten, as. an attorney, don’t you recognize that that paragraph clearly sets forth that the mineral sale from yourself to your father made during the pendency of this suit, was extinguished and that this instrument was being given to replace that mineral sale?
A. Yes, sir, I think that has that effect. In my opinion, it wasn’t necessary, though.
Q. I understand, but that was what the purpose of that instrument was, do you understand that?
A. No, the purpose of the instrument and my execution was to satisfy a requirement of Mr. Bud Meadors had made before H. L. Whitten could convey the one-sixth interest which had previously conveyed him on September 24, 1975.
Q. I understand that that was your motive, but you recognize that that instrument-as a lawyer, you read the instrument before you signed it, didn’t you?
A. I did, sir.”
The clear provisions of the second deed and the testimony of the attorney who prepared it and the attorney who was the grantor on it conclusively establish that the purpose of the document was to extinguish the first servitude by the partition sale and to create a new servitude in favor of H. L. *968 to serve as a sound basis for his royalty sale to Shaw.
LSA-R.S. 31:179 provides:
“The owner of a mineral right or interest therein is a necessary party to an action for partition of the land subject to his right. If the owner of a mineral right or interest therein is not made a party to such an action, the partition is not invalid, but the right or interest therein is not extinguished or otherwise affected.”
Appellants contend the provisions of the cited section of the mineral code to the effect that a mineral right is not extinguished in a partition proceeding where its owner is not made a party establish that the September 24, 1975 servitude was not extinguished by the partition because H. L. was not made a party to the partition action, and for that reason it supported a good and valid title for the royalty conveyance from H. L. to Meadors’ client, Shaw. They then assert that Meadors’ required second deed serves no purpose and should not have been required by Meadors and has no legal effect.
A review of the history of LSA-R.S. 31:179 establishes that there was a sound basis for Meadors having considered that there existed a distinct possibility that the September 24, 1975 servitude was extinguished by the partition sale because LSA-R.S. 31:179 may not have been applicable to the servitude created during the pendency of the suit to partition by licitation.
In the decision of Amerada Petroleum Corporation v. Reese, 195 La. 359, 196 So. 558 (1940), the supreme court held that a mineral lease was extinguished by a partition sale even though the owner of the mineral lease was not made a party to the partition suit. The legislature in order to change the result of Amerada passed legislation which was incorporated in LSA-C.C. art. 741[2] from which LSA-R.S. 31:179 was *969 derived to specifically provide that a mineral right whose owner was not made a party to the partition suit was unaffected by it.
In the decision of Martin Timber Company v. Roy, 147 So.2d 699 (La.App. 2d Cir. 1962), this court construed LSA-C.C. art. 741 to only be applicable to mineral transactions that occurred before the partition suit was instituted. In the Martin partition suit the plaintiff had initially placed of record a notice of lis pendens but cancelled it before they recorded the mineral sale. The Second Circuit did not attribute in its opinion any significance to whether or not notice of lis pendens was or was not of record as a basis for concluding that LSA-C.C. art. 741 was inapplicable to mineral servitudes created during the pendency of partition suit. Defendants in the Martin case urged in the trial court, contending, inter alia, that plaintiff’s mineral vendee was an indispensable party to the action. The trial court had rejected this contention and the Court of Appeal affirmed it. The effect of the Court of Appeal’s decision was to revert to the rule of Amerada, supra, in those cases where the mineral servitude was created during the pendency of a suit to partition by licitation. The supreme court granted writs and reviewed Martin, supra, at 244 La. 1050, 156 So.2d 435 (1963). The supreme court reversed the Court of Appeal and the trial court and held that the mineral vendee was an indispensable party to the litigation and remanded the case for further proceeding. The supreme court interpreted the Court of Appeal’s opinion to be an adjudication that LSA-C.C. art. 741 was inapplicable to a mineral servitude created subsequent to the institution of the suit to partition by licitation. The supreme court then stated that they neither approved nor disapproved the Court of Appeal’s interpretation of Art. 741:
“Further, we neither approve nor disapprove at this time, the apparent ruling of the Court of Appeal that the provisions of Revised Civil Code Article 741 (relied on by plaintiffs) are inapplicable to the Norman minerals which were acquired subsequent to the commencement of this action.” Id. at 438.
The comments under LSA-R.S. 31:179 reflect that the provisions of LSA-R.S. 31:179-187 “are an integrated set of provisions redrafting Article 741 of the Civil Code.” Though the provisions of LSA-R.S. 31:179 state that the mineral owner is a necessary rather than an indispensable party to the partition suit as he was held to be in Martin, supra, the provision contains no positive declaration that it is applicable to owners of mineral rights that acquire their interest subsequent to the institution of the suit for partition by licitation.
Our research reveals no appellate court decision subsequent to the supreme court Martin, supra, case which addresses the issue of whether LSA-C.C. art. 741 and its successor LSA-R.S. 31:179 are applicable to mineral rights created during the pendency of the partition suit.
Attorney Meadors was no doubt uncertain ás to how the supreme court would eventually interpret LSA-R.S. 31:179. The jurisprudence surrounding its source provision, LSA-C.C. art. 741, created that uncertainty. We do not now find it necessary to make an adjudication that LSA-R.S. 31:179 is or is not applicable to mineral servitudes acquired during pendency of a suit to partition the land by licitation, nor the effect upon such transaction of the existence or absence of a notice of lis pendens, for we conclude that there was sufficient uncer *970 tainty surrounding the validity of' H. L. Whitten’s September 24,1975 mineral servitude to justify the requirement that a document be signed declaring it to be extinguished and requiring Leon to execute a new deed creating another mineral servitude. Even if the first servitude survived the partition sale by virtue of the provisions of LSA-R.S. 31:179 H. L. Whitten was empowered by the provisions of LSA-C.C. art. 11:
“Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.
But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good.” (our emphasis),
to extinguish his servitude. As the trial judge pointed out LSA-R.S. 31:27 specifically provides for the termination of a mineral servitude in the manner set forth in the second deed:
“27. Extinction of mineral servitudes A mineral servitude is extinguished by:

(3) renunciation of the servitude on the part of him to whom it is due, or the express remission of his right; * * * ”
We conclude that the mineral sale executed by defendants on September 16, 1976 satisfying a valid title requirement of the attorney for H. L. Whitten’s royalty vendee effectively extinguished the mineral servitude created September 24, 1975. The language of the act of extinguishment provides “was extinguished by a partition by licitation suit styled Leon H. Whitten v. Annie Baily Beasley”. We construe this language to establish that the intent of the parties to the September 16, 1976 mineral deed was to extinguish the earlier servitude as of the date of the partition sale. Under these circumstances, the disputed mineral interest was correctly determined by the trial judge to have passed in the partition sale.
We find the doctrine of estoppel alluded to by the trial judge in his reasons for judgment is unnecessary to achieve the results concluded by the trial judge.
Appellants by their own action destroyed the September 24, 1975 mineral servitude and they can not now say that they destroyed it as it was applicable to the requirement of Meadors and the royalty vendee, Shaw, but that they did not destroy it as is applicable to plaintiffs in this suit. Once it was destroyed it was gone and it is totally immaterial as to who may benefit by its extinguishment. In this case Shaw benefited from the extinguishment because he had an absolute good title to his royalty acquired from H. L., regardless of what interpretation the court might apply to LSA-R.S. 31:179. Plaintiffs in this law suit incidently benefited from the extinguishment, though they had no part in bringing it about, because they have a good title to the disputed mineral interest whatever may be the correct interpretation of LSA-R.S. 31:179.
For the reasons set forth by the trial judge as supplemented by us, we AFFIRM at appellants’ cost.
MARVIN, J., dissents with written reasons.

. Alternatively, plaintiffs contend on appeal that the partition sale was a warranty transaction and if the title to the minerals of the one-sixth interest conveyed by Leon in the partition sale was vested in H. L. at the time of the partition sale and not extinguished by it, that when Leon acquired the one-third of the land and minerals in the sale from Harmon, that the after-acquired title doctrine placed one-half of the minerals there acquired by Leon (which would equal one-sixth) back into Harmon who purchased the land at the partition sale.

 The full text was contained in the trial judge’s reasons, but we omitted all but the applicable portion of the statute.

. C.C. art 741: “1. If in the suit for a partition, it be determined that the estate be disposed by licitation, and the owner of any servitude or mineral interest or interest therein, be not joined as a party thereto, the servitude or mineral interests or interests therein, shall continue to exist on the estate unaffected and unimpaired by the licitation.
2. If in the suit for a partition, it be determined that the estate be disposed of by licitation, and the owner and/or owners of any servitude or mineral interest affecting said estate, or any interest therein or part or portion thereof, be made a party thereto, and he who has granted the servitude, or mineral interest, or his successor who may be responsible for his warranty, becomes the owner of the whole, the servitude or mineral interest shall then exist on the whole estate, as if he had always been the sole owner; provided, however, that in such event the owner of such servitude or mineral interest shall not be entitled to participate in or receive any part of the proceeds derived from the licitation of such property.
In all cases where the owner of any servitude or mineral interest is joined as a party to any suit for partition by licitation of an estate, before the property shall be offered for sale, there shall be an appraisement thereof by a Notary and two appraisers appointed by the Court, in which appraisement there shall be, first an ap-praisement of the entire estate, as a whole, and second, an appraisement of the rights of each party holding a servitude or mineral interest in the property or in any portion thereof, or in any undivided interest therein. Such appraisement shall be submitted to the Court for homologation, and the definitive judgment directing the sale of the property shall provide, in the event of an adjudication of the property to a third person, for an equitable distribution of the total price of the property as a whole to the interested parties in the proportion the interest of each bears to the whole.
If, by the licitation, the estate be adjudicated to a third person, all servitudes, mineral interests or interests therein, owned by parties to the suit for partition by licitation of said estate, shall become extinct and the owners of such servitudes, mineral interests or interests therein, shall be relegated to the proceeds of the sale of the property for distribution or partition of the proceeds as hereinabove set out. But, if the adjudication be made to anyone who has granted in any way such servitude or mineral interest, such mineral interest shall be ipso facto perfected to the extent of the interest in the property acquired by such grantor, and, in such case, the owner of such servitude, mineral interests or interests therein, shall not be entitled to any participation in the proceeds realized from the sale of said estate; provided, however, that the title to servitudes or mineral interests in the property shall not be affected or impaired by any sale to effect a partition by licitation in any case where the title in and to the servitude or mineral interests may emanate from the whole of the co-owners of the estate, whether descending by single or separate title.
3. No sale of an estate for the purpose of effecting a partition thereof shall be annulled, *969 avoided or set aside because of the fact that the owner of any servitude or mineral interest affecting the whole or any portion of said estate, or interest therein, is not joined as a party to the suit instituted for the limitation of said estate; provided, however, that the interest of such party in such a case shall not be affected or impaired by the sale of said property, but shall remain in force to the same extent as if said sale had not been made.
The term “mineral interest”, as hereinabove used, is hereby defined and shall mean any form of interest in minerals, whether it be oil, gas and mineral leases, or an interest in the mineral rights,' or a royalty interest, or any other form of interest whatsoever in which minerals or mineral rights in the property may be affected.”